**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | **5:06-CR-59 (HL)** |
| **STEVE DEASON,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |
| | : | |

## ORDER

Before the Court is Defendant Steve Deason's Motion to Suppress (Doc. 53). Deason seeks to suppress evidence obtained from the June 10, 2003 search of his office space. The search was conducted as part of an investigation into allegations of bribery, kickbacks, gratuities, false statements, mail or wire fraud, conflicts of interest, price inflation, and bid rigging involved in the execution of Government Blanket Purchase Agreements at Robins Air Force Base. Deason challenges the search warrant on the ground that the underlying affidavit lacks any indicia of probable cause that he was involved in criminal activity. For the reasons set out below, the Motion is denied.

**I. Facts**

The affidavit identifies thirteen subjects of the investigation, including Deason. One of those subjects was Defendant Tommy Huff, who worked in the Maintenance

Directorate at Robins Air Force Base ("RAFB") with Defendant, although they worked in different sections of the Directorate. The Affidavit describes a scheme in which Huff would use his Government Purchase Card ("GPC") to place orders at S&G Supply, Inc. ("S&G"). Shannon Harper, the owner and Chief Financial Officer of S&G, would allegedly accept payment for the order but then deliver only partial orders to the Government or fail to deliver the product at all. According to the affidavit, Shannon Harper engaged in similar schemes with other subjects of the investigation.

The allegations of unlawful activity against Deason include the following facts: According to a confidential informant, Huff purchased plastic boxes using his GPC and gave those boxes to Deason. Deason would then place his company logo on the boxes and sell them as tackle boxes for fishing. The affidavit acknowledges that Deason had his own GPC, but there is no allegation that he used it unlawfully. The affidavit also confirms the reliability of the confidential informant: she provided information regarding the schemes and the Government confirmed that the financial transactions she described actually took place. The informant also provided unsolicited documentation that supported her information, and the Government verified those documents.

The search at issue was the search of Defendant's office on RAFB. RAFB is a highly secure, closed military base. The items seized during the search were International Merchant Purchase Authorization Card ("IMPACT") statements and

invoices from vendors. IMPACT statements are monthly credit card statements sent by U.S. Bank to all RAFB employees who are authorized to use a government-issued credit card for government use. Invoices were sent to RAFB employees by vendors when the employee ordered an item for RAFB. The RAFB employees were required to maintain the invoices with the monthly IMPACT statements. In addition to these items, agents seized a variety of Defendant's personal belongings, e.g., music compact disks, photographs, catalogs, and magazines.

## II. Discussion

### A. Standing

An individual does not have standing to challenge the legality of a search unless he had a legitimate expectation of privacy in the area searched. United States v. King, 509 F.3d 1338, 1341 (11th Cir. 2007). The Supreme Court of the United States has recognized that there is an expectation of privacy over one's office space. Mancusi v. DeForte, 392 U.S. 364 (1968). The Government, however, argues that Defendant had no expectation of privacy in his office because it was located on a closed military base. Because Deason must have had an expectation of privacy in order to have standing to challenge the search, the Court addresses this threshold issue before turning to the sufficiency of the warrant.

The Fourth Amendment protects only those places in which an individual can establish that he had a reasonable expectation of privacy against government intrusion. United States v. Cooper, 203 F.3d 1279 (11th Cir. 2000). Furthermore,

even when the Fourth Amendment applies, it does not protect against all searches, but only those that are unreasonable.  U.S. Const. Amend. IV.  Justice Scalia highlighted the distinction between whether an individual maintains an expectation of privacy and whether a particular search was reasonable in his swing opinion in O'Connor v. Ortega, 480 U.S. 709, 732 (1987) (concurring in the result).  As he explained, one may have an expectation of privacy over an area, but where the government's search is reasonable, no Fourth Amendment violation occurs.  Id.  The distinction between whether a defendant has an expectation of privacy and whether the search was reasonable is important because if a defendant enjoys no expectation of privacy then the Fourth Amendment offers him no protection and the analysis ends.  If, however, he has an expectation of privacy, then the court must determine whether the search was reasonable, i.e., whether it was conducted pursuant to a warrant or falls within one of the exceptions to the warrant requirement.     The Government argues that civilians have no expectation of privacy on closed military bases.  However, at least two of the three circuits[1] that have addressed the validity of searches of civilians on military bases have not concluded that the defendant lacked an expectation of privacy while on the base. See  Morgan v. United States.  323 F.3d 776, 782 (9th Cir. 2003); United States v. Ellis, 547 F.2d 863, 866 (5th Cir. 1977).  Instead, those courts found that the searches were lawfully conducted because the defendants in those cases provided

---

[1]As discussed *infra*, the rule in the Fourth Circuit's decision is unclear.

implied consent to the search when they entered the military base.  In other words,

the defendants had standing to challenge the searches, but those searches passed

constitutional muster.

In a case that is binding precedent on this Court, the Fifth Circuit held that a

visitor had impliedly consented to a search of his motor vehicle while onboard a

Naval Air Station.  Ellis, 547 F.2d at 866.  The court found that the search was

constitutionally permissible because the defendant had impliedly consented to the

search by entering onto the base.  Id. at 866.  The Ninth Circuit also upheld the

validity of a search of a visitor on a military base without probable cause in Morgan.

323 F.3d at 782.  Like the Fifth Circuit, the Morgan court based its holding on the

visitor's implied consent to search, which he gave by entering the military base.  Id.

It cautioned that "a categorical exception to the probable cause rule for all searches

on closed military bases" went too far.  Id.  Instead, "the probable cause requirement

is only obviated if the defendant impliedly consented to the search."  Id.

In United States v. Jenkins, a case that the Government cites, the Fourth

Circuit held that the search of a visitor to Andrews Air Force Base without probable

cause did not violate the defendant's Fourth Amendment rights.  986 F.2d 76, 79

(4th Cir. 1993).  It was unclear, however, what the basis of the Jenkins court's ruling

was.  It conflated the analysis of whether an expectation of privacy existed with the

question of implied consent: the court reasoned that express consent was not

necessary because implied consent was sufficient, but then stated that "[t]he barbed-

wire fence, the security guards at the gate, the sign warning of the possibility of search, and a civilian's common-sense awareness of the nature of a military base . . . puncture any reasonable expectations of privacy." Id.

Regardless of the conflicting language in Jenkins, however, this Court must follow the precedent set in Ellis. In the Eleventh Circuit, therefore, a visitor on a military base maintains his expectation of privacy–and hence his protections under the Fourth Amendment–when he enters a closed military installation, even though he also provides a broad implied consent to search while on the base. The Court therefore finds that Deason has standing to challenge the search of his workspace.

**B. Validity of the Search**

Neither the Government nor the Defendant presented sufficient facts to determine the scope of Deason's implied consent or the circumstances surrounding the search, e.g., whether Deason was present during the search, what exactly was searched, the extent to which Deason's workspace was used by other employees, etc. The Court need not determine, however, whether Deason's implied consent included a consent to search his workspace because the warrant was sufficient to establish probable cause, and the agents' reliance on the search warrant was reasonable.

Courts afford a preference to searches conducted pursuant to a warrant. United States v. Ventresca, 380 U.S. 102, 109 (1965). Therefore, where the "circumstances are detailed, where reason for crediting the source of the information

is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." Id. In cases where the affidavit presents only doubtful or marginal probable cause, "the resolution . . . should be largely determined by the preference to be accorded to warrants." Id. Thus, the magistrate judge's determination of probable cause is given great deference. See id. A court's determination about whether probable cause supported a warrant involves simply "a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Furthermore, "probable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " Id. at 241. And even if the affidavit does not establish probable cause, exclusion of the evidence obtained in the search is inappropriate where the officer executing the warrant acted in good faith and reasonably relied on the magistrate's probable cause determination. United States v. Leon, 468 U.S. 897, 922 (1984).

The affidavit in this case alleges that Huff purchased plastic boxes with federal funds and gave those boxes to Deason. Deason, in turn, attempted to sell those boxes for his own personal profit. Defendant objects to these facts as insufficient to establish probable cause because there is no allegation that Defendant knew that

7

the boxes were purchased with a GPC.  Defendant is correct that there is no specific allegation of knowledge.  However, finding the affidavit insufficient because it failed to mention knowledge would amount to the kind of  hypertechnical reading that the Supreme Court has condemned, and would fail to afford proper deference to the magistrate judge's determination of probable cause.  It was more probable that Deason knew the boxes were stolen than it is that he thought Huff gave them to him out of simple generosity, especially in light of the larger fraudulent scheme in which Huff was operating.

A "reasonable and prudent" man, taking the facts in the affidavit as a whole, would conclude that there was a fair probability that contraband or evidence of a crime would be found in Deason's workspace.  See Gates, 462 U.S. at 241 (establishing the reasonable and prudent man standard).  Furthermore, the warrant contains sufficient facts to render the agents' reliance on it reasonable and in good faith.  Defendant's Motion to Suppress is therefore denied.

**SO ORDERED**, this the 8th day of April, 2008.

*s/  Hugh Lawson*
**HUGH LAWSON, Judge**

tch