# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | |
| | : | 5:06-cr-59 (HL) |
| STEVE DEASON and TOMMIE HUFF, | : | |
| | : | |
| Defendants. | : | |

# ORDER

## I. INTRODUCTION

Before the Court are Motions for a James hearing by Defendants Steve Deason (Doc. 47) and Tommie Huff (Doc. 63). Defendants are charged with one count of conspiracy to commit wire fraud, mail fraud, and bribery, in addition to multiple substantive counts of bribery. The Government alleges that Deason and Huff conspired with Shannon and Jimmy Harper to defraud their employer, Warner Robins Air Force Base. The Government plans to offer evidence of co-conspirator statements, and both Defendants have objected. The Court granted the Motions for pretrial hearing, which was held in chambers before the start of trial. The objections to the statements of alleged co-conspirators are, however, overruled.

## II. FACTS

Before trial began, the Government presented a proffer[1] of its evidence of a conspiracy so that the Court could make a preliminary assessment of whether the evidence would be sufficient to establish a conspiracy. That evidence included the testimony of Shannon Harper, an alleged former co-conspirator. She is expected to testify that she and Jimmy Harper had an agreement with Huff and Deason. Pursuant to that agreement, Huff would place orders for supplies with one of the Harpers' companies, S&G or APC, and pay for the orders with government purchase cards ("GPC"). S&G or APC would then either deliver only a portion of the ordered items (a "shorted" order), or no items at all. The proceeds from the undelivered or shorted orders were then divided between the Harpers and Huff.

Shannon and Jimmy Harper are also prepared to testify that Defendant Deason participated in this scheme. According to the Harpers, Deason placed orders through Huff for items for his personal use, and for items he later sold in his private business, "The Crappie Shop." Those orders were allegedly paid for with a GPC. In addition, both Defendants accompanied the Harpers on a hunting trip to Mexico, which the Harpers paid for in return for the Defendants' cooperation in the conspiracy.

The Government plans to corroborate the Harpers' version of events with at

---

[1]Both Defendants agreed to presentation of the evidence using a proffer, as opposed to a full-blown evidentiary hearing.

least three additional pieces of evidence. First, Huff received cash payments for his participation in the conspiracy. The Government will therefore produce documentary evidence of Shannon Harper's cash withdrawals for these payments. Second, there are eyewitnesses who saw Huff come to APC's office and pick up this money. Finally, irregularities in the paperwork associated with the S&G and APC orders support the Government's contention that the Defendants' knowingly participated in the fraudulent activity. The co-conspirator statements that the Government intends to offer include statements regarding the formation of the scheme and the details of individual orders.

## II. DISCUSSION

### A. Standard

An out-of-court statement offered to prove the truth of the matter asserted is not hearsay if it is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Thus, evidence of a co-conspirator's out-of-court statements[2] are admissible against a defendant where the Government can establish by a preponderance of the evidence: (1) that the conspiracy existed, (2) that it involved the declarant and the nonoffering party, and (3) that the statement was made in furtherance of that conspiracy. Bourjaily v.

---

[2]Evidence of a defendant's own out-of-court statements are of course statements of a party opponent, which are not hearsay and are therefore admissible. Fed. R. Evid. 801(d)(2). At issue here, therefore, is not the use of a defendant's out-of-court statement against himself (e.g., Deason's statements used against Deason), but the use of his co-conspirator's out-of-court statements against him (e.g., Huff's statements used against Deason).

United States, 483 U.S. 171, 175-76 (1987); United States v. Hasner, 340 F.3d 1261, 1274 (11th Cir. 2003). The Government must prove that a defendant had knowledge of the overall scheme and voluntarily decided to participate in it. United States v. Chandler, 388 F.3d 796, 806 (11th Cir. 2004). Each member of the conspiracy must share a common purpose to violate the law, but each member does not need to participate in every stage or have knowledge of all the details of the conspiracy. United States v. Cole, 755 F.2d 748, 755 (11th Cir. 1985). Proof of the agreement may be either circumstantial or direct. Chandler, 388 F.3d at 806. In deciding whether the Government has met its burden to prove these facts, the court may consider the statements themselves, but those statements alone are not sufficient to establish the existence of the conspiracy. Hasner, 340 F.3d at 1274-75.

The preferred method for dealing with co-conspirators' statements is to make a preliminary determination that there is substantial evidence to demonstrate the required elements before the statement is revealed to the jury. United States v. Monaco, 702 F.2d 860, 877 (11th Cir. 1983); United States v. Espino-Perez, 798 F.2d 439, 441 (11th Cir. 1986). Then, at the conclusion of the evidence the judge should reconsider the initial ruling and decide whether the Government has met its burden. Monaco, 702 F.2d at 877.

**B. Analysis**

The Court finds that the Government has made a sufficient showing that it will be able to prove the existence of a conspiracy at trial. The Harpers' testimony

certainly establishes an agreement to defraud Robins Air Force Base. It identifies as members of the conspiracy Shannon Harper, Jimmy Harper, Huff, and–although perhaps to a lesser degree–Deason. The Harpers' testimony will be corroborated by bank records of Shannon Harper's cash withdrawals, eyewitness testimony of Huff's acceptance of payment, and documentary evidence of irregularities in invoices and other records. Deason is connected to the overall scheme by using Huff to order items for his personal use from S&G or APC, and by his receipt of a kickback in the form of the expense-paid trip to Mexico. Finally, the co-conspirator statements that will be introduced were made in furtherance of the conspiracy because they involve the formation of the scheme and the details of individual fraudulent orders.

The Government has therefore met its initial burden to demonstrate substantial evidence of the elements of a co-conspirator statement. The Court therefore will allow the introduction of these statements, subject to the Government's ability to prove up the conspiracy at trial.

**SO ORDERED**, this the 22nd day of April, 2008.

*s/ Hugh Lawson*
**HUGH LAWSON, Judge**

tch